**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**SOUTHWESTERN DIVISION**

RICHARD BRAKEBILL, DELORIS BAKER,
DOROTHY HERMAN, DELLA MERRICK,
ELVIS NORQUAY, RAY NORQUAY, and
LUCILLE VIVIER, on behalf of themselves,

        Plaintiffs,

    vs.

ALVIN JAEGER, in his official capacity as the
North Dakota Secretary of State,

        Defendants.

Civil No. 1:16-cv-008

# Plaintiffs' Opposition to Defendant's Motion to Dismiss

# Table of Contents

I.    Preliminary Statement ............................................................................ 1

II.   To Satisfy Federal Rule 8, Plaintiffs Only Need Allege Facts
      Sufficient To Indicate A Claim Is Plausible ............................................ 2

III.  Plaintiffs' Five Causes of Action All Qualify As Plausible ....................... 4

      A.   Plaintiffs Allege Two Claims For Violation Of Section 2
           Of The Voting Rights Act That Qualify As Plausible ...................... 4

      B.   Plaintiffs Allege A Claim For Violation Of The 14th
           Amendment's Equal Protection Clause That Qualifies As
           Plausible ...................................................................................... 7

      C.   Plaintiffs Allege Claims For Violations Of The North
           Dakota Constitution That Qualify As Plausible ............................ 8

IV.   Defendant's Arguments Do Not Justify Dismissal Of Plaintiffs'
      Complaint .......................................................................................... 10

      A.   Defendant's Contentions Are Premature ................................... 10

      B.   Defendant Improperly Ignores The Allegations in
           Plaintiffs' Complaint And Relies on Contrary Assertions
           To Support Its Arguments .......................................................... 11

           1.   Defendant's contention that the Voter ID Laws do
                not unconstitutionally burden plaintiffs relies on
                improper assertions and conclusions ............................... 12

           2.   Defendant's contention that the Voter ID Laws do
                not violate The Voting Rights Act relies on
                improper factual assertions and assumptions ................. 14

           3.   Defendant's contention that the Voter ID Laws do
                not deny Plaintiffs equal protection relies on
                improper factual assertions and assumptions ................. 15

      C.   Defendant Bases Its Legal Arguments On Inapplicable
           Cases .......................................................................................... 18

V.    Conclusion.......................................................................................... 21

# Table of Authorities

## U.S. Supreme Court Cases

Ashcroft v. Iqbal,
556 U.S. 662 (2009) ................................................................................................ 1, 12

Bell Atl. Corp. v. Twombly,
550 U.S. 544 (2007) ...................................................................................................... 3

Burdick v. Takushi,
504 U.S. 428 (1992) .................................................................................................. 7, 8

Crawford v. Marion Cty. Election Bd.,
553 U.S. 181 (2008) ........................................................................... 7, 8, 10, 11, 19

Thornburg v. Gingles,
478 U.S. 30 (1986) ........................................................................................................ 5

## Federal Appellate Cases

ACLU of New Mexico v. Santillanes,
546 F.3d 1313 (10th Cir. 2008) ................................................................................ 7

Bone Shirt v. Hazeltine,
461 F.3d 1011 (8th Cir. 2006) ............................................................................. 5, 11

Buckanaga v. Sisseton Indep. Sch. Dist., No. 54-5,
804 F.2d 469 (8th Cir. 1986) ................................................................................. 10

Common Cause/Georgia v. Billups,
554 F.3d 1340 (11th Cir. 2009) ............................................................................. 11

Frank v. Walker, 773 F.3d 783
(7th Cir. 2014) ..................................................................................... 17, 18, 19, 20

Gonzales v. Arizona,
677 F.3d 383 (9th Cir. 2012) .................................................................................. 11

Grawitch v. Charter Commc'ns, Inc.,
750 F.3d 956 (8th Cir. 2014); ................................................................................... 3

League of Women Voters of N.C. v. North Carolina,
769 F.3d 224 (4th Cir. 2014) ........................................................................... 4, 6, 11

Murphy v. Aurora Loan Servs., LLC,
    699 F.3d 1027 (8th Cir. 2012)................................................................ 3

Obama for America v. Husted,
    697 F.3d 423 (6th Cir. 2012)............................................................ 7, 11

Ohio State Conference of N.A.A.C.P. v. Husted,
    768 F.3d 524 (6th Cir. 2014) vacated as moot sub nom. Ohio
    State Conference of The Nat. Ass'n For The Advancement of
    Colored People v. Husted, No. 14-3877, 2014 WL 10384647
    (6th Cir. Oct. 1, 2014).................................................................... 4, 6

Ohio State Conference of NAACP v. Husted,
    768 F.3d 524 (6th Cir. 2014)............................................................. 11

Veasey v. Abbott,
    796 F.3d 487 (5th Cir. 2015)..............................................4, 6, 11, 20, 21

Wesley v. Campbell,
    779 F.3d 421 (6th Cir. 2015)............................................................... 3

## Federal District Court Cases

Bala v. Stenehjem,
    671 F. Supp. 2d 1067 (D.N.D. 2009). ............................................... 3, 12

Frank v. Walker,
    17 F. Supp. 3d 837 (E.D. Wis. 2014), rev'd, 768 F.3d 744
    (7th Cir. 2014). .............................................................................. 11

Veasey v. Perry,
    71 F. Supp. 3d 627 (S.D. Tex. 2014)..................................................... 7

## Other Cases

Hector v. City of Fargo,
    844 N.W.2d 542 (N.D. 2014) ............................................................... 9

State ex rel. Olson v. Bakken,
    329 N.W.2d 575 (N.D. 1983) .............................................................. 9

Kuhn v. Beede,
    249 N.W.2d 230 (N.D. 1976) ........................................................................................ 9

Stern v. City of Fargo,
    122 N.W. 403 (N.D. 1909) ......................................................................................... 9

Spatgen v. O'Neil,
    169 N.W. 491 (N.D. 1918). ........................................................................................ 9

Martin v. Kohls, 444 S.W.3d 844, 852-53 (Ark. 2014) ......................................................... 9

Richard Brakebill, et al. v. Alvin Jaeger, Case No. 1:16-cv-0008
Opposition to Defendant's Motion to Dismiss
iii

# I.     Preliminary Statement.

Plaintiffs, seven Native American voters from North Dakota, brought this action to invalidate North Dakota's recently enacted voter ID laws HB 1332 and 1333 (the "Voter ID Laws") on the grounds they improperly burden and disenfranchise Native American voters and violate the Voting Rights Act and the U.S. and North Dakota Constitutions. Plaintiffs filed a 42-page complaint containing specific factual allegations and setting forth in detail the basis for five causes of action. Defendant now moves this Court to terminate this lawsuit, before Plaintiffs have taken any discovery or had their day in court, based on blanket assertions that the Voter ID Laws should be presumed constitutional and Plaintiffs' causes of action should be held invalid. In arguing for dismissal, Defendant ignores the pleading standards in the Federal Rules of Civil Procedure and improperly relies on or assumes purported "facts" that are directly contrary to Plaintiffs' allegations. Defendant's arguments and motion are premature and contrary to the Rules. Plaintiffs' allegations are sufficient to overcome a Rule 12(b)(6) motion, and Defendant's motion should be denied.

To overcome a motion to dismiss, Plaintiffs' "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[1] Plaintiffs' Complaint far exceeds this standard. It details the history of the Voter ID Laws; explains how North Dakota significantly changed its rules and eliminated its fail-safe provisions in enacting the Voter ID Laws; explains the difficulties Native Americans face in obtaining voter ID under the Laws because they lack documentation (such as birth certificates) and also lack the means to acquire the required documents; details the burdens many Native Americans in North Dakota must overcome to travel to government offices to obtain voter IDs; explains that Native Americans in North Dakota disproportionately suffer from poverty and homelessness and are less likely to have access to transportation; details how

---

[1] Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

poverty and unemployment deprive Native Americans in North Dakota of the financial and other means to obtain voter IDs under the Voter ID Laws; details how North Dakota's efforts to implement the Voter ID Laws have failed to enable Native Americans to obtain voter IDs; and explains that Native Americans in North Dakota disproportionately lack voter ID. Plaintiffs further allege that the new Voter ID Laws have imposed severe burdens on their right to vote, have resulted in significant voter disenfranchisement, and have not served their purported purposes. And Plaintiffs allege facts showing that Native Americans in North Dakota have historically suffered from discrimination in the areas of voting rights, education, land ownership, and lending, and that the Voter ID Laws in combination with these conditions have created a disproportionate burden on Native Americans. These alleged facts, if proven, plausibly entitle Plaintiffs to relief for violations of the Voting Rights Act, the equal protection clauses of the U.S. and North Dakota Constitutions, and the voter eligibility requirements set forth in the North Dakota Constitution.

In moving to dismiss Plaintiffs' Complaint, Defendant has not cited a single Voting Rights case in which a court granted a motion to dismiss. Defendant also improperly relies on purported or assumed facts that (a) have no evidentiary support in the record, and (b) are contrary to Plaintiffs' allegations—which the Court must accept as true under Rule 12(b)(6). The Court should allow this case to proceed to discovery, so both parties have an opportunity to develop a full factual record. For these reasons, Plaintiffs respectfully request that the Court deny Defendant's motion.

## II.   To Satisfy Federal Rule 8, Plaintiffs Only Need Allege Facts Sufficient To Indicate A Claim Is Plausible.

Rule 8(a) of the Federal Rules of Civil Procedure

"provides that pleadings must contain: '(1) a short and plain statement of the grounds for the court's jurisdiction'; (2) 'a short and plain statement of the

claim showing that the pleader is entitled to relief'; and (3) 'a demand for the relief sought.'"[2]

To satisfy these requirements, all a pleading must do is give the defendant fair notice of the claims and the grounds on which they rest.[3]

When considering a motion to dismiss under Rule 12(b)(6), "the court must accept all factual allegations in the complaint as true."[4] Further, the Court is required to construe all reasonable inferences in the plaintiff's favor and view the pleading in the light most favorable to the plaintiff.[5] A court cannot grant a Rule 12(b)(6) motion to dismiss "unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."[6]

The U.S. Supreme Court recently reaffirmed that compliance with Rule 8 does not require "'detailed factual allegations.'"[7] Rather, to survive a motion to dismiss, a complaint must merely state a claim that appears "plausible."[8] According to the Supreme Court, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9] "The defendant has the burden of showing that the plaintiff has failed to state a claim for relief[.]"[10]

---

[2] Bala v. Stenehjem, 671 F. Supp. 2d 1067, 1076 (D.N.D. 2009).

[3] Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

[4] Bala, 671 F. Supp. 2d at 1076.

[5] Grawitch v. Charter Commc'ns, Inc., 750 F.3d 956, 960 (8th Cir. 2014); Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1033 (8th Cir. 2012).

[6] Bala, 671 F. Supp. 2d at 1076 (citing Young v. City of St. Charles, Mo., 244 F.3d 623, 627 (8th Cir. 2001)).

[7] Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

[8] Iqbal, 556 U.S. at 678.

[9] Iqbal, 556 U.S. at 678.

[10] Wesley v. Campbell, 779 F.3d 421, 428 (6th Cir. 2015) (internal citations omitted).

## III.   Plaintiffs' Five Causes of Action All Qualify As Plausible.

## A.   Plaintiffs Have Alleged Claims For Violations Of Section 2 Of The Voting Rights Act That Qualify As Plausible.

Plaintiffs' first two causes of action claim violations of the Voting Rights Act. Count I alleges that the new requirements of the Voter ID Laws violates Section 2 of the Voting Rights Act.[11] Count II alleges that the Voter ID Laws' elimination of pre-existing fail-safe provisions violates Section 2.[12] Defendant's Motion only appears to address Count I.

To determine whether the challenged Voter ID Laws violate Section 2 of the Voting Rights Act, the Court must evaluate the "totality of the circumstances" to determine whether those Voter ID Laws impose a discriminatory burden on members of a protected class (i.e., so they have less opportunity than others to participate in the political process), and whether that burden is caused by or linked to social and historical conditions that have produced or currently produce discrimination against members of the protected class.[13] In analyzing the "totality of circumstances," the Court may consider such factors as:

> § the extent of any history of official discrimination in the state or political subdivision that touched upon the right of members of the protected class to register, to vote, or otherwise participate in the democratic process;

> § the extent to which members of the protected class in the state or political subdivision bear the effects of discrimination in such areas as education,

---

[11] ECF Document No. 1 at ¶¶ 177-83 (stating cause of action for violation of Section 2 of the Voting Rights Act).

[12] ECF Document No. 1 at ¶¶ 184-91 (stating cause of action for violation of Section 2 of the Voting Rights Act).

[13] Veasey v. Abbott, 796 F.3d 487, 504-05 (5th Cir. 2015); League of Women Voters of N.C. v. North Carolina, 769 F.3d 224, 240 (4th Cir. 2014); Ohio State Conference of N.A.A.C.P. v. Husted, 768 F.3d 524, 554 (6th Cir. 2014) vacated as moot sub nom. Ohio State Conference of The Nat. Ass'n For The Advancement of Colored People v. Husted, No. 14-3877, 2014 WL 10384647 (6th Cir. Oct. 1, 2014).

employment and health, which hinder their ability to participate effectively in the political process;

§   the extent to which the state or political subdivision has used voting practices or procedures that may enhance the opportunity for discrimination against the protected class;

§   whether there is a significant lack of responsiveness on the part of elected officials to the particularized needs of members of the protected class; and

§   whether the policy underlying the state or political subdivision's use of such voting qualification, prerequisite to voting, or standard, practice or procedure is tenuous.[14]

Plaintiffs allege numerous facts that establish their Section 2 claims are plausible. For example, Plaintiffs allege in detail that the Voter ID Laws disproportionately burden those in poverty in North Dakota; Native Americans living in North Dakota make up a disproportionate number of those in poverty (family poverty rates on North Dakota reservations are 2-6 times greater than the State average); impoverished citizens are much more likely not to have access to the documentation needed to obtain a voter ID; and therefore a disproportionate number of Native Americans now lack and cannot obtain qualifying voter ID.[15] Moreover, Plaintiffs allege that Native Americans in North Dakota

---

[14] Thornburg v. Gingles, 478 U.S. 30, 36-37, 45 (1986) (noting that the list of factors to evaluate, which are known as the Senate Factors, is neither "comprehensive nor exclusive," and "there is no requirement that any particular number of factors be proved, or that a majority of them point one way or the other"); Husted, 768 F.3d at 550-51; Bone Shirt v. Hazeltine, 461 F.3d 1011, 1018 (8th Cir. 2006).

[15] ECF Doc. No. 1 at ¶¶ 55-65 (alleging that unemployment rate for Native Americans in North Dakota is about four times worse than the State average); id. at ¶¶ 69-70 (Native Americans in North Dakota are four times more likely not to have a motor vehicle); id. at ¶¶ 71-81 (impoverished citizens are less likely to have documentation needed for voter IDs, and many Native Americans do not have and cannot obtain tribal IDs that would satisfy the voter ID requirements).

disproportionately relied on the voucher and affidavit fail-safe provisions that the new Voter ID Laws removed.[16] Furthermore, Plaintiffs allege in detail that Native Americans are more likely to live in poverty, lack qualifying ID, and to have relied upon fail-safe mechanisms because they continue to bear the socioeconomic effects caused by decades of racial discrimination.[17] This history interacts with the new Voter ID Laws to cause a disproportionate burden on Native Americans.[18] For all these reasons, Plaintiffs' Complaint sufficiently pleads two causes of action under the Voting Rights Act.[19]

Defendant argues there is no Section 2 violation because, under the Voter ID Laws, Native Americans do not "have less opportunity than any other racial group to get the identification needed to vote in North Dakota elections."[20] Defendant has misconstrued the standard. The courts have held that "Section 2 applies to any 'standard, practice, or procedure' **that makes it harder for an eligible voter to cast a ballot**, not just those that actually prevent individuals from voting."[21] Indeed, Defendant concedes that if the Voter ID Laws make "it needlessly hard to get the valid identification," a court should find a violation of the Voting Rights Act.[22] The allegations in the Complaint indicate the Voter ID Laws have made it "harder"—indeed, "needlessly hard"—for eligible Native American voters to satisfy the voter ID requirements and cast a ballot.

---

[16] ECF Doc. No. 1 at ¶¶ 128-29.

[17] ECF Doc. No. 1 at ¶¶ 142-76 (alleging that Native Americans in North Dakota have historically suffered from discrimination, and this discrimination has hindered their ability to obtain the documentation and qualifying ID needed to vote).

[18] ECF Doc. No. 1 at ¶¶ 142-76 (alleging that Native Americans in North Dakota have historically suffered from discrimination, and this discrimination has hindered their ability to obtain the documentation and qualifying ID needed to vote).

[19] Veasey, 796 F.3d at 504-05; League of Women Voters, 769 F.3d at 240; Husted, 768 F.3d at 553.

[20] ECF Doc. No. 16 at 8.

[21] Husted, 768 F.3d at 552 (emphasis added). See also Veasey, 796 F.3d at 504-05.

[22] ECF Doc. No. 16 at 8.

## B.   Plaintiffs Allege A Claim For Violation Of The 14th Amendment's Equal Protection Clause That Qualifies As Plausible.

Plaintiffs' third cause of action alleges violation of the Equal Protection Clause of the 14th Amendment.[23] To determine whether a burden on the right to vote violates the Equal Protection Clause, the Court must weigh the severity of the burden on the right to vote against the state's asserted interests in passing the law.[24]

The Complaint contains numerous, detailed allegations of the severe burdens on the right to vote. For example, Plaintiffs allege that three named Plaintiffs had to pay money to vote[25]—a burden the U.S. Supreme Court has held to be per se unconstitutional.[26] Plaintiffs also allege that Native Americans (who have limited access to transportation—either private or public) will have to travel an average of more than 120 total miles to obtain a "free" voter ID—assuming they already have the necessary documentation, which, Plaintiffs allege, is not the case for some Plaintiffs and many other Native Americans.[27] Plaintiffs further allege that they and other Native Americans have had and will continue to

---

[23] ECF Document No. 1 at ¶¶ 192-99 (stating cause of action for violation of the Equal Protection Clause of the 14th Amendment to the U.S. Constitution).

[24] Burdick v. Takushi, 504 U.S. 428, 432 (1992); see also Crawford v. Marion Cty. Election Bd., 553 U.S. 181, 191 (2008); Obama for America v. Husted, 697 F.3d 423, 428-29 (6th Cir. 2012); ACLU of New Mexico v. Santillanes, 546 F.3d 1313, 1320 (10th Cir. 2008); Veasey v. Perry, 71 F. Supp. 3d 627, 671-72 (S.D. Tex. 2014).

[25] ECF Doc. No. 1 at ¶ 8 (plaintiff Norquay had to purchase a new tribal ID to vote); id. at ¶ 9 (plaintiff Merrick had to purchase a new tribal ID to vote); id. at ¶ 12 (plaintiff Herman had to purchase a new tribal ID but still was not able to vote); id. at ¶¶ 95-125 (detailing high costs and other burdens associated with having to obtain required voter ID).

[26] Crawford, 553 U.S. at 198 ("The fact that most voters already possess a valid driver's license, or some other form of acceptable identification, would not save the statute under our reasoning in Harper, if the State required voters to pay a tax or a fee to obtain a new photo identification.").

[27] ECF Doc. No. 1 at ¶ 69-70 & 93-94 (Native Americans lack access to transportation); id. at ¶¶ 71-81 (Native Americans lack qualifying forms of ID); id. at ¶¶ 82-94 (Native Americans lack access to state offices that issue voter IDs).

have trouble navigating the state-imposed system to actually obtain a voter ID.[28] The burdens of significant travel time/distance and compliance logistics are magnified when combined with the other alleged facts of disproportionate unemployment,[29] disproportionate poverty,[30] disproportionate homelessness,[31] and disproportionate lack of access to transportation.[32]

Because there is a severe burden and infringement on the right to vote, the state's interests here must be compelling to justify the limitation and be narrowly drawn to support that compelling state interest.[33] Plaintiffs allege that is not the case—that the state's interests in enacting the Voter ID Laws are overwhelmed and outweighed by the severe burdens the law imposes on voting, and the law is not narrowly drawn to support those interests.

## C.   Plaintiffs Allege Claims For Violations Of The North Dakota Constitution That Qualify As Plausible.

Plaintiffs' fourth cause of action alleges violation of the Equal Protection Clause of the North Dakota Constitution.[34] The allegations supporting Plaintiffs' claims for violation of

---

[28] See, e.g., ECF Doc. No. 1 at ¶ 12 (detailing plaintiff Herman's difficulties in trying to obtain qualifying ID to vote, which ultimately resulted in Herman not voting).

[29] ECF Doc. No. 1 at ¶¶ 55-57 (alleging unemployment rate for North Dakota Native Americans is approximately four times the state average).

[30] ECF Doc. No. 1 at ¶¶ 58-64 (alleging that the family and individual poverty rates for North Dakota Native Americans are significantly higher than the state average, by many multiples).

[31] ECF Doc. No. 1 at 65 (alleging that North Dakota Native Americans represent a disproportionate percentage of North Dakota's homeless population).

[32] ECF Doc. No. 1 at ¶¶ 69-70 (alleging that North Dakota Native Americans are roughly twice as likely not to have access to a motor vehicle).

[33] Crawford, 553 U.S. at 190-91; Burdick, 504 U.S. at 433-34.

[34] ECF Doc. No. 1 at ¶¶ 200-205 (stating a cause of action for violation of the Equal Protection Clause of the North Dakota Constitution).

the Equal Protection Clause of the U.S. Constitution also establish that Plaintiffs have viable claims for violations of the Equal Protection Clause of the North Dakota Constitution.[35]

Plaintiffs' fifth count alleges that the Voter ID Laws violate the voter qualification provisions of the North Dakota Constitution.[36] The North Dakota Constitution provides: "Every citizen of the United States, who has attained the age of eighteen years and who is a North Dakota resident, shall be a qualified elector."[37] The North Dakota Supreme Court has declared that "where the Constitution prescribes the qualifications of electors the Legislature is powerless to add or subtract from those qualifications."[38] The Complaint recites detailed facts indicating the Voter ID Laws impose new and burdensome voter ID requirements on North Dakota citizens that go beyond those authorized by the North Dakota Constitution.[39]

Plaintiffs' allegations are more than sufficient to show Plaintiffs' have viable claims for violations of the North Dakota Constitution. Defendant's Motion fails to even address

---

[35] Hector v. City of Fargo, 844 N.W.2d 542, 554 (N.D. 2014) (citing Gange v. Clerk of Burleigh Cnty. Dist. Court, 429 N.W.2d 429, 433 (N.D. 1988) (strict scrutiny applies to the infringement of a fundamental right); State ex rel. Olson v. Bakken, 329 N.W.2d 575, 582 (N.D. 1983) (referencing the "fundamental constitutional right to vote."); Kuhn v. Beede, 249 N.W.2d 230, 248 (N.D. 1976) (reading the statutes of the state "to uphold the fundamental right to vote."); Stern v. City of Fargo, 122 N.W. 403, 408 (N.D. 1909) (noting that "our whole election system . . . is built up and founded on the fundamental principle that every elector shall be given the opportunity to vote for or against any candidate.").

[36] ECF Doc. No. 1 at ¶¶ 206-211 (alleging violations of North Dakota's constitutional provisions relating to qualified electors).

[37] N.D. Const., Art. II, § 1.

[38] Spatgen v. O'Neil, 169 N.W. 491, 494 (N.D. 1918).

[39] ECF Doc. No. 1 at ¶¶ 14-46 (alleging North Dakota's previous voter ID rules and the new voter ID requirements imposed by HB 1332 and HB 1333); id. at ¶¶ 206-11 (alleging violations of North Dakota's constitutional provisions relating to qualified electors); see Martin v. Kohls, 444 S.W.3d 844, 852-53 (Ark. 2014) (holding that the voter ID law was unconstitutional because it imposed a requirement upon voters beyond those recognized in the Constitution).

Plaintiffs' state-law claims.

## IV. Defendant's Arguments Do Not Justify Dismissal Of Plaintiffs' Complaint.

In Defendant's motion to dismiss, Defendant does not address the factual allegations pled by Plaintiffs (as it must to show Plaintiffs have not alleged, and cannot allege, plausible claims), or provide a single basis why it would be appropriate to dismiss Plaintiffs' claims at this juncture. Defendant simply previews arguments it intends to make on the merits and asserts facts it apparently hopes to prove when it is permitted to introduce evidence. These assertions are not proper or relevant in a motion to dismiss, and they indicate why Defendant's motion must be denied.

## A. Defendant's Contentions Are Premature.

Defendant does not provide any support why it is timely and not premature to attempt to resolve Voting Rights Act claims and constitutional challenges based on a motion to dismiss without a full factual record. Defendant does not cite a single Voting Rights case that a court dismissed with prejudice on a Rule 12(b)(6) motion, and Plaintiffs are not aware of any. Recognizing the importance of the issues at stake and the complex factual and legal questions, the Eighth Circuit and other courts have emphasized the importance of developing a full factual record in Voting Rights cases and the necessity for courts to make detailed findings of fact in which a court "must discuss not only the evidence that supports its decision but also all the substantial evidence contrary to its opinion as it relates to each" of the "totality of circumstances" factors.[40]

Accordingly, courts have universally given plaintiffs in Voting Rights cases the opportunity to take discovery and develop a full factual record before ruling on the merits:

§ In Crawford v. Marion Cty. Election Bd., the lower court resolved the case on a

---

[40] Buckanaga v. Sisseton Indep. Sch. Dist., No. 54-5, 804 F.2d 469, 472 (8th Cir. 1986) (citing Velasquez v. City of Abilene, 725 F.2d 1017, 1020 (5th Cir. 1984)).

motion for summary judgment.[41]

§   In Veasey v. Abbott, the lower court issued its ruling after a 9-day bench trial.[42]

§   In Frank v. Walker, the lower court ruled after a 2-week bench trial.[43]

§   In Ohio State Conference of NAACP v. Husted, the court issued its ruling only after hearing evidence submitted by the parties and by Amici Curiae. [44]

§   In League of Women Voters of N.C. v. North Carolina, the lower court ruled after a 4-day bench trial.[45]

§   In Gonzales v. Arizona, the court ruled after a full trial.[46]

§   In Obama for America v. Husted, the court issued its decision after an evidentiary hearing.[47]

§   In Common Cause/Georgia v. Billups, the court decided the case after a full bench trial.[48]

§   In Bone Shirt v. Hazeltine, the court resolved the case after a full trial.[49]

## B.   Defendant Improperly Ignores The Allegations in Plaintiffs' Complaint And Relies on Contrary Assertions To Support Its Arguments.

To properly attack Plaintiffs' pleading in a motion to dismiss, Defendant is required to accept all of Plaintiff's factual allegations as true and then explain how those allegations

---

[41] Crawford, 553 U.S. at 188-89.

[42] Veasey, 796 F.3d at 520.

[43] Frank v. Walker, 17 F. Supp. 3d 837, 842 (E.D. Wis. 2014), rev'd, 768 F.3d 744 (7th Cir. 2014).

[44] Ohio State Conference of NAACP v. Husted, 768 F.3d 524, 529 (6th Cir. 2014).

[45] League of Women Voters, 769 F.3d at 230-32.

[46] Gonzales v. Arizona, 677 F.3d 383, 388-89 (9th Cir. 2012).

[47] Obama for America, 697 F.3d at 425-26.

[48] Common Cause/Georgia v. Billups, 554 F.3d 1340, 1345-48 (11th Cir. 2009).

[49] Bone Shirt, 461 F.3d at 1016.

still fail to show a "plausible" entitlement to relief.[50] Defendant has failed to do this. Instead, Defendant improperly ignores Plaintiffs' factual allegations, argues the Voter ID Laws should be presumed constitutional, and offers its own set of factual and legal arguments that contradict the allegations in Plaintiffs' Complaint.[51] This provides an additional basis to deny Defendant's motion to dismiss.

## 1.   Defendant's contention that the Voter ID Laws do not unconstitutionally burden plaintiffs relies on improper assertions and conclusions.

Defendant's argument in Section II.A of its brief that the Voter ID Laws do not "place an unconstitutional burden on Plaintiffs" relies on several improper factual and legal assertions. For example, Defendant contends that "if the identification necessary to vote **is available to people willing to take the time** to obtain a birth certificate or to obtain a driver's license or non-driver identification card," then that proves the "person was unwilling to invest the necessary time."[52] However, Defendant is not entitled at this juncture to assume facts or make assertions regarding which means of identification were "available" to "people willing to take the time" to obtain means of identification. Thus, there is no factual basis for Defendant's argument. To the contrary, Plaintiffs allege that "people willing to take the time" to try to obtain new identification were nevertheless deprived of their right to vote. For example, Plaintiffs allege that Richard Brakebill and Dorothy Herman each made numerous attempts to obtain a qualifying ID but were not able to obtain one.[53] Defendant and the Court must take **those allegations** as true.

Defendant relies on language from Frank v. Walker, but Defendant cannot assume that

---

[50] Bala, 671 F. Supp. 2d at 1076; Iqbal, 556 U.S. at 678.

[51] ECF Doc. No. 16 at 3.

[52] ECF Doc. No. 16 at 6 (emphasis added).

[53] ECF Doc. No. 1 at ¶¶ 6 (Brakebill), 12 (Herman).

the facts from Frank apply in this action.[54] As more fully discussed below, Frank involved a significantly different voter identification law and very different facts. Furthermore, Defendant has not submitted—and cannot submit at this stage—any evidence indicating Plaintiffs do not have a voter ID as "a matter of choice," or that Plaintiffs "already have copies of their birth certificates" and yet choose not to get "free" voter IDs. Thus, there is no factual basis for Defendant's argument. To the contrary, Plaintiffs have alleged that many Native Americans, including named Plaintiffs Richard Brakebill, Elvis Norquay, and Lucille Vivier, cannot get voter IDs because they do not have birth certificates.[55] Defendant and the Court must take **those allegations** as true.

Defendant also argues that "North Dakota's interests identified as justifications for the enactment of the Voter ID Laws are neutral and sufficiently strong to require dismissal of Plaintiff's facial attack on N.D.C.C. § 16.1-05-07."[56] This contention is similarly invalid. However, there is no evidence before the Court (nor can there be at this stage) supporting the purported neutrality and strength of "North Dakota's interests."

Moreover, Plaintiffs' allegations, which must be taken as true, contradict Defendant's assertions about the State's interest. Plaintiffs have alleged that the "legislative record is devoid of any evidence of in-person voter fraud in North Dakota," and that the approach North Dakota adopted to address purported concerns about voter fraud has caused the "disenfranchisement of significant numbers of qualified Native American and other voters."[57] Furthermore, Plaintiffs allege that an "election where a large percentage of voters cannot vote because of obstacles created by the state, which are arbitrarily restrictive and

---

[54] ECF Doc. No. 16 at 6-7.

[55] ECF Doc. No. 1 at ¶¶ 6 (Brakebill), 7 (Norquay), 10 (Vivier).

[56] ECF Doc. No. 16 at 7.

[57] ECF Doc. No. 1 at ¶¶ 138-39 (alleging that new voter ID law does not serve state interest in reducing voter fraud).

not necessary, is not free, fair and open."[58] These allegations indicate the Voter ID Laws were not narrowly drawn to advance any purported state interest. If Defendant wants to argue that state interests justify the Voter ID Laws and that those laws were narrowly drawn to advance those interests, the case must proceed to discovery so the parties can develop a factual record regarding what the purported state interests are.

## 2. Defendant's contention that the Voter ID Laws do not violate The Voting Rights Act relies on improper factual assertions and assumptions.

Defendant's contention in Section II.B of its brief that the Voter ID Laws do not violate the Voting Rights Act is similarly laced with defective arguments:

§   Defendant argues "Plaintiffs have not **established** that any difference in economic circumstances is discrimination attributable to North Dakota."[59] At this stage, Plaintiffs need not "establish" anything to survive a motion to dismiss.[60] That is not the standard. All Plaintiffs must do is present factual allegations that provide a plausible basis for relief. Plaintiffs have done this. They have alleged detailed facts indicating, among other things, there is a history of discrimination in North Dakota with regard to voting rights,[61] and that Native Americans in North Dakota have historically suffered discrimination in North Dakota in the areas of education, loss of land, and lending and economic opportunity.[62]

---

[58] ECF Doc. No. 1 at ¶ 140 (alleging that new voter ID laws are contrary to state interest in free, fair and open elections).

[59] ECF Doc. No. 16 at 8 (emphasis added).

[60] And Defendant is incorrect in suggesting that Plaintiffs ultimately must establish that all discrimination is "attributable to North Dakota."

[61] ECF Doc. No. 1 at ¶¶ 143-50 (alleging facts indicating Native Americans have historically suffered from discrimination in North Dakota with respect to voting rights).

[62] ECF Doc. No. 1 at ¶¶ 151-76 (alleging facts indicating Native Americans have historically been discriminated against in the North Dakota educational system, that Native

§   Defendant argues "there has been **no finding** that the State of North Dakota has discriminated in any of the aforementioned areas."[63] Again, this case is currently at the pleading stage, and no "finding" is required. Plaintiffs allege that Native Americans living in North Dakota have historically suffered from discrimination.[64] These allegations are enough to show a plausible entitlement to relief.

§   Defendant argues it is "essential to look at everything (the 'totality of circumstances' …) to determine whether there has been such an impact."[65] At this early stage, there is no factual record the Court could review to apply a "totality of the circumstances" test. Plaintiffs have alleged facts sufficient to indicate Plaintiffs have a plausible claim for relief.[66]

## 3.   Defendant's contention that the Voter ID Laws do not deny Plaintiffs equal protection relies on improper factual assertions and assumptions.

In Section II.C of its brief, Defendant contends that the Voter ID Laws do not operate to "deny equal protection of the law."[67] Again, Defendant has failed to show how Plaintiffs' Complaint is deficient in alleging claims for violation of equal protection under both United States and North Dakota law:

§   Defendant asserts in conclusory fashion, without explanation or specificity, that Plaintiffs "lack standing to bring an equal protection claim based on

---

Americans have lost considerable land rights due to discriminatory allotment and other policies, and that Native Americans have suffered from discriminatory lending policies).

[63] ECF Doc. No. 16 at 8 (emphasis added).

[64] ECF Doc. No. 1 at ¶¶ 143-76 (alleging historical discrimination in the areas of voting rights, education, land allocation, and lending).

[65] ECF Doc. No. 16 at 8.

[66] See, supra, Section III.A.

[67] ECF Doc. No. 16 at 9-11.

N.D.C.C. § 16.1-05-07."[68] The Court should disregard this argument and, given the lack of specificity, should not entertain any supplemental argument in a Reply or during oral argument. Plaintiffs should not have to guess or deduce what Defendant is arguing in order to respond.

§   Defendant alleges that N.D.C.C. § 16.1-05-07 "applies equally to all North Dakota residents, including the potential costs, travel and time associated with satisfying the identification requirements of N.D.C.C. § 16.1-05-07."[69] Defendant is not entitled at this stage of the case to assume or assert these facts concerning "potential costs, travel and time associated with satisfying" the Voter ID Laws. Plaintiffs allege, among other things, that Native Americans living in North Dakota suffer from greater unemployment and significantly higher poverty and homelessness rates,[70] and are less likely to have access to transportation.[71] Because of these and other factors, it is disproportionately costly and burdensome for Native Americans to obtain the required voter ID, which was empirically proven during the 2014 elections.[72] These alleged facts, which now must be taken as true, indicate Plaintiffs have a plausible claim for violation of the equal protection laws.

§   Defendant asserts North Dakota's "important **regulatory interests** are

---

[68] ECF Doc. No. 16 at 9.

[69] ECF Doc. No. 16 at 9-10.

[70] ECF Doc. No. 1 at ¶¶ at 55-65 (alleging facts indicating Native Americans in North Dakota have far higher unemployment and poverty rates than other state citizens).

[71] ECF Doc. No. 1 at ¶¶ at 69-70 & 93-94 (alleging facts indicating North Dakota Native Americans lack access to means of transportation).

[72] ECF Doc. No. 1 at ¶¶ at 95-125 (detailing the costs associated with obtaining the required voter ID, including loss of work, document and/or license fees, travel expenses); id. at ¶¶130-36 (alleging facts indicating new voter ID law has resulted in disenfranchisement in North Dakota, including during the 2014 elections).

generally sufficient to justify reasonable, nondiscriminatory restrictions," and that the "**State's interests** justify the inconvenience[s]" imposed on voters by the Voter ID Laws at issue.[73] Defendant should not be permitted to assume these facts. Plaintiffs have alleged facts indicating the Voter ID Laws have not satisfied the State's interests and actually have been counterproductive because they have caused disenfranchisement. This is enough to allow the case to progress to discovery. Any argument Defendant desires to make about "regulatory" or "state" interests should be made with the benefit of a developed factual record.

§   Defendant argues "Plaintiffs have not **demonstrated** that the proper remedy, even assuming an unjustified burden on some voters," would be invalidation of the Voter ID Laws.[74] Again, at this pleading stage, Plaintiffs are not required to "demonstrate" anything, including concerning their proposed remedy. All Plaintiffs must do is present factual allegations sufficient to show they have a plausible claim for relief. The parties can argue about the appropriateness of the requested remedy after Plaintiffs have prevailed on liability.

Finally, Defendant concludes "N.D.C.C. § 16.1-05-07 treats all similarly situated qualified North Dakota voters alike and does not place a burden or requirement on the Plaintiffs that it is not equivalent or identical to the burden placed on any other qualified North Dakota voter."[75] Defendant is improperly assuming facts, and is not entitled to offer evidence at the pleading stage to support this assertion. Plaintiffs have alleged facts sufficient to indicate Plaintiffs have a plausible claim for violation of the equal protection laws of the United States and of North Dakota.[76] That is sufficient to survive the pleading

---

[73] ECF Doc. No. 16 at 10 (emphasis added).

[74] ECF Doc. No. 16 at 10 (emphasis added).

[75] ECF Doc. No. 16 at 11.

[76] See, supra, Section III.B.

stage and proceed to discovery.

## C.    Defendant Bases Its Legal Arguments On Inapplicable Cases.

In arguing the Voter ID Laws are constitutional "as a matter of law," Defendant relies principally on two cases—Crawford v. Marion Cty. Election Bd. and Frank v. Walker. But these cases have little or no applicability to Plaintiffs' claims.

For example, the key allegations in this case are much different than those in Crawford and Frank. Crawford concerned Indiana's relatively lenient photo ID requirement and none of the Crawford plaintiffs claimed they would be prevented from voting in the upcoming election.[77] Similarly, none of the plaintiffs in Frank contended they had gone to a polling place and were denied their right to vote. In other words, neither Crawford nor Frank **involved allegations of actual disenfranchisement**. In contrast, Plaintiffs in this case allege they **actually were turned away from voting**, or **had to pay to vote**, or **they will not be permitted to vote** because they cannot possibly get the required ID. Plaintiffs have expressly alleged **disenfranchisement**.[78]

Moreover, the voter ID laws at issue in those cases were, in several material respects, much less restrictive than North Dakota Voter ID Laws and less likely to disenfranchise voters.  Both the Indiana law at issue in Crawford and the Wisconsin law at issue in Frank featured fail-safe provisions: the law in Crawford allowed indigent voters, religious objectors and voters who did not have the required photo ID when they went to vote to cast provisional ballots, which the State would count if the voter signed an affidavit,[79] whereas the law at issue in Frank allows a person who appears to vote but does not have an ID to cast a provisional ballot and return at a later time to produce ID.[80] In contrast, the

---

[77] Frank v. Walker, 773 F.3d 783, 786 (7th Cir. 2014) (Posner, J. Dissenting).

[78] See ECF Doc. No. 1 at ¶¶ 42-44.

[79] Crawford, 553 U.S. at 199.

[80] Walker, 773 F.3d at 785 (Posner, J. Dissenting).

Voter ID Laws at issue in this case eliminated previously existing affidavit and voucher fail-safe systems. In Crawford, the Supreme Court stated that the existence of fail-safe mechanisms was an important consideration in its decision to uphold the law.[81]

There are other critical differences between the Voter ID Laws and the laws at issue in Crawford and Frank:

§   In Crawford, the law only required ID for in-person (and not absentee) voting.[82] In Frank, absentee voters only had to provide ID if they were first time voters or voters that changed their address or name.[83] In contrast, the North Dakota Voter ID Laws essentially requires **every** voter to provide the required ID.[84]

§   In Crawford, the law liberally allowed the use of any Indiana or U.S. government-issued ID that includes name, photo, and expiration date.[85] In Frank, the law allowed eight forms of ID, including driver's licenses, Wisconsin state ID cards, passports, military IDs, recent naturalization papers, tribal ID, a signed photo ID issued by a college or university, or an unexpired receipt from a driver's license/ID application.[86] In contrast, the North Dakota Voter ID law only allows four forms of ID.

§   In Frank, the law provided exceptions for members of the military, overseas voters that do not intend to return, participants in the states' confidentiality

---

[81] Crawford, 553 U.S. at 197-98 ("[T]he availability of the right to cast a provisional ballot provides an adequate remedy for problems of that character."); see also id. at 199 ("The severity of that burden is, of course, mitigated by the fact that, if eligible, voters without photo identification may cast provisional ballots that will ultimately be counted.").

[82] Crawford, 553 U.S. at 185-86.

[83] Walker, 773 F.3d at 785 (Posner, J. Dissenting).

[84] ECF Doc. No 1 at ¶ 43-44.

[85] Walker, 773 F.3d at 784.

[86] Frank, 768 F.3d at 746; Walker, 773 F.3d at 785 (Posner, J. Dissenting).

program (such as domestic violence victims), and infirm or disabled voters who are indefinitely confined.[87] The North Dakota Voter ID Laws only exempt military personnel stationed away from North Dakota and people with long-term care certificates.

§   In Frank, Wisconsin issued regulations making any required supporting documentation (like birth certificates) free.[88] In contrast, North Dakota charges $7 for a birth certificate and does not exempt the costs of any documentation.[89]

In contrast, the case that appears most potentially relevant to the issues in this case is Veasey v. Abbott, which concerned Texas's voter ID law. In Veasey, the Fifth Circuit ruled that Texas's voter ID law violated Section 2 of the Voting Rights Act because it had a disproportionate impact on minorities based on social and historical conditions.[90] While Texas's voter ID law is more restrictive than the laws at issue in Crawford and Frank, **it is still less restrictive than the North Dakota Voter ID Laws**:

§   The Texas law authorized the use of six different forms of voter ID when voting in person,[91] whereas North Dakota only permits four forms of ID for in person voting.[92]

§   The Texas law permitted voters to cast a provisional ballot if they could not produce ID at the polls. The North Dakota Voter ID Laws have no fail-safe provisions at all.

§   The Texas law waived any fees that the state or counties required to obtain a

---

[87] Walker, 773 F.3d at 785 (Posner, J. Dissenting).

[88] Frank, 768 F.3d at 746-7.

[89] ECF Doc. No, 1 at ¶¶ 106.

[90] See generally Veasey, 796 F.3d 487.

[91] Veasey, 796 F.3d at 494.

[92] ECF Doc. No, 1 at ¶¶ 29, 39, 40.

birth certificate.[93] North Dakota charges $7 for a birth certificate, and does not waive any fees.[94]

§   The Texas law recognized exceptions for voters with disabilities, voters that lost their ID as a result of a natural disaster, and for voters who have a religious objection to being photographed.[95] In contrast, North Dakota's Voter ID Laws only have exceptions for military personnel and for people in long-term care.

The fact the Fifth Circuit in Veasey struck down a law that is less restrictive than the North Dakota Voter ID Laws provides additional support for the conclusion that Plaintiffs' claims for relief are plausible.

## V.   Conclusion.

Plaintiffs' Complaint includes detailed claims for relief that more than satisfy the plausibility standard. Defendant has not set forth any supportable basis why Plaintiffs' claims should be dismissed at this juncture and why the parties should not proceed to develop a factual record in this case. For these reasons, Plaintiffs respectfully request that the Court deny Defendant's motion to dismiss.[96]

Dated: March 2, 2016                    Respectfully submitted,

---

[93] Veasey, 796 F.3d at 494-95.

[94] ECF Doc. No, 1 at ¶¶ 106.

[95] Veasey, 796 F.3d at 495.

[96] If the Court were to decide to grant Defendant's motion to dismiss in whole or in part (which, respectfully, it should not), Plaintiffs request an opportunity to amend their complaint.

By:  /s Tom Dickson
               Tom Dickson

Tom Dickson, ND Bar No. 03800
tdickson@dicksonlaw.com
**DICKSON LAW OFFICE**
P.O. Box 1896
Bismarck, North Dakota  58502
Phone:   (701) 222-4400
Fax:       (701) 258-4684

Matthew Campbell, NM Bar No. 138207, CO Bar
    No. 40808
mcampbell@narf.org
**NATIVE AMERICAN RIGHTS FUND**
1506 Broadway
Boulder, Colorado 80302
Phone:   (303) 447-8760

Joel West Williams, PA Bar No. 91691
williams@narf.org
**NATIVE AMERICAN RIGHTS FUND**
1514 P Street NW (Rear), Suite D
Washington, D.C. 20005
Phone:   (202) 785-4166

Richard de Bodo, CA Bar No. 128199
Rich.debodo@morganlewis.com
**MORGAN, LEWIS & BOCKIUS LLP**
1601 Cloverfield Blvd., Suite 2050 North
Santa Monica, CA  90404-4082
Phone:  (310) 255-9055
Fax:       (310) 907-2000

Attorneys for Plaintiffs